UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LENGEORGE M. BURNS,

        Plaintiff,

        v.                                                      Case No. 22-cv-0572-bhl

NATHAN TAPIO,
MD MARTIN,
MARY MOORE,
ROBERT WEINMAN,
C. MARCHANT,
PAULA STELSEL, and
JANE DOE,

        Defendants.

## SCREENING ORDER

Plaintiff Lengeorge Burns, who is currently serving a state prison sentence at the Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Burns' motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Burns has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Burns has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $68.65. Burns' motion for leave to proceed without prepaying the filing fee and his motion for an extension of time to pay the initial fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Burns explains that, on July 25, 2017, he hurt his wrist and hand when he fell while playing basketball. He states that a few days later, while he was carrying a bag, he felt a pop in his wrist area. Burns asserts that, because he continued to be in pain, he alerted health services of his injury on August 3, 2017, and a week later was seen by a nurse (not a defendant) who gave him ice and told him to rest for about a month. During the following weeks the swelling subsided, but pain in the palm of his hand remained at a ten out of ten. Burns states that he alerted health services and an x-ray was ordered. In September 2017, the results of the x-ray came back normal. Dkt. No. 1 at 2.

Burns explains that he continued to complain about the pain, so in January 2018, Defendant Dr. Nathan Tapio ordered a wrist support for him. Burns states that he informed Dr. Tapio that he thought the issue was with his hand and some fingers, not his wrist. According to Burns, he complained continuously for months about the pain. He asserts that, on July 9, 2018, he was finally seen by Dr. Eric Nelson (not a defendant), who was an off-site orthopedist. According to Burns, another x-ray was performed, and Dr. Nelson expressed "significant concerns about fracture involving hook of the hamate," which is the lower palm of the hand. Dkt. No. 1 at 2.

About a week later, on July 16, 2018, Burns was examined by Dr. Xiang[1] Feng Gu (not a defendant) at Lakeside Neurocare. Burns explains that neuro tests revealed he had mild to moderate left carpel tunnel syndrome and mild left ulnar sensory neuropathy at his wrist. Burns states that Dr. Xiang told him he would need surgery to fix these issues, but he first wanted a CT scan to see whether there was a fracture. Dkt. No. 1 at 2.

Burns asserts that Dr. Tapio did not meet with him to discuss the specialists' findings. He explains that he found out about their concerns only after completing a file review about a month later, in August 2018. Burns filed an inmate complaint about having to wait nearly a year to see the

---

[1] Burns spells Dr. Xiang's name differently throughout his complaint, but this is the spelling he uses most frequently.

specialists; he also asked that a CT scan be scheduled immediately. The institution complaint examiner (not a defendant) dismissed the inmate complaint, explaining that, per the health services manager, the CT scan had been ordered. On September 15, 2018, Burns wrote to Dr. Tapio complaining about the constant pain he was experiencing and asking for an update on the CT scan. A nurse (not a defendant) responded, "Awaiting CT to be arranged." A month later, Burns wrote to the health services manager with similar complaints, and a nurse (not a defendant) responded, "CT Scheduled to evaluate." Dkt. No. 1 at 2.

Burns explains that more than three months later, on February 19, 2019, he again wrote to Defendant Health Services Manager Robert Weinman[2] complaining about the pain and asking for an update. He states that a nurse (not a defendant) responded, "routine appointment for CT of hand ordered on 12/11/18" and explained that there was a four to six month waiting list. On July 1, 2019, Burns again wrote to Weinman complaining about pain, cramping, and loss of feeling in his hand. Weinman responded that his July 9 x-ray was normal. Burns states that Weinman did not address Dr. Nelson's concern that his hand could be fractured. Dkt. No. 1 at 2-3.

According to Burns, the CT scan did not happen until December 16, 2020, two years after he was first informed that it had been ordered. Burns asserts that during that time he complained to Weinman and his provider Defendant APNP Mary Moore about his pain and asked for the CT scan to be scheduled. He states that the CT scan was not scheduled; instead, Moore sent him to the orthopedist and neurologist multiple times. Dkt. No. 1 at 3.

Burns explains that at offsite appointments in December 2019 and June 2020, Dr. Xiang noted that the carpal tunnel syndrome was progressing, and he recommended that Burns return to the orthopedist to address the possible fracture before he could address the carpal tunnel issues. Burns

---

[2] Burns spells Weinman's name differently throughout his complaint; this is the spelling he uses in the complaint's caption.

asserts that, contrary to Dr. Xiang's conclusions that his condition was progressing, Moore misinformed him that his nerve issues were improving. According to Burns, he had an offsite evaluation at the orthopedist on September 22, 2020. APNP Andrea Smits (not a defendant) also expressed concerns about a possible fracture and then personally ordered a CT scan because the institution had not yet done so. Burns states that he filed another inmate complaint about the delay in ordering the CT scan. Weinman stated that the CT scan had been ordered but explained that the pandemic was causing delays. Burns highlights that the CT scan was first recommended in 2018, years before the pandemic. Burns states that he finally received the CT scan on December 16, 2020. Dkt. No. 1 at 3.

Burns asserts that he later had a consult with Dr. Nelson, who explained that the CT scan confirmed there was no fracture, but he noted that surgery was needed to fix the carpal tunnel syndrome and other nerve issues. Burns had surgery in March 2022.

## THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). To state a claim under the Eighth Amendment, a plaintiff must allege that prison officials intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). "Something more than negligence or even malpractice is required." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). A plaintiff can show that an official was deliberately indifferent to his condition "by demonstrating that the treatment he received was

5

'blatantly inappropriate.'" *Id.* Also, "[a] delay in treatment may show deliberate indifference if it exacerbated [the plaintiff's] injury or unnecessarily prolonged his pain." *Id*. at 777-78.

Burns may proceed on a deliberate indifference claim against Dr. Tapio and APNP Moore based on allegations that they delayed ordering a CT scan for his hand despite two specialists recommending that he have one so they could determine how to proceed with treating his injury. Burns also alleges that for years he informed Dr. Tapio and APNP Moore that he was in significant pain, but he does not clarify whether they prescribed any treatments (such as physical therapy or a TENS unit) or medication in an effort to relieve his pain. Given that courts must construe a pro se plaintiff's allegations broadly when screening the complaint, the Court will also allow Burns to proceed on a claim that Dr. Tapio and APNP Moore were deliberately indifferent to his complaints of pain. Finally, Burns may proceed on a deliberate indifference claim against Weinman based on allegations that he ignored Burns' many complaints that he was in pain and that Dr. Tapio and APNP Moore were disregarding the specialists' recommendations that he receive a CT scan. *See Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012) (explaining that deference to a physician's decisions "may not be blind or unthinking, particularly if it is apparent that the physician's orders will likely harm the patient.").

Burns does not, however, state a claim against Dr. Martin or the Jane Doe appointment scheduler. Although he names them in the caption of his complaint, he does not include allegations explaining what they did or did not do to violate his rights. Burns merely describes Dr. Martin as being "temporarily responsible for [his] overall health and medical treatment," Dkt. No. 1 at 1, but this description is too vague for the Court to reasonably infer that he was personally involved in violating Burns' rights. Similarly, Burns describes the Jane Doe scheduler as "responsible for scheduling the appointment for inmates['] off-site visits," *id.*, but this job duty, without more, does not suggest that she was personally responsible for the delayed appointment. *Colbert v. City of*

6

*Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (explaining that §1983 requires an individual to be personally involved in the alleged constitutional violation). If during discovery Burns finds evidence supporting an inference that Dr. Martin or the scheduler was personally responsible for the delay, then he may seek to file an amended complaint that includes those allegations. Burns is reminded that he must comply with Civil L. R. 15.

Nor does Burns state a claim against C. Marchant, who he describes as "legally responsible for supervising all medical and health care staff." Dkt. No. 1 at 1. The doctrine of respondeat superior cannot be used to hold a supervisor liable for the misconduct of a subordinate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The only time a supervisor will be held liable for a subordinate's misconduct is if the supervisor directs or consents to the misconduct. *See Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones*, 856 F.2d at 992. Finally, Burns does not state a claim against Paula Stelsel, who affirmed the dismissal of his inmate complaint. "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

**IT IS THEREFORE ORDERED** that Burns' motion for leave to proceed without prepaying the filing fee (Dkt. No. 4) and his motion for an extension of time to pay the initial partial filing fee (Dkt. No. 9) are **GRANTED**.

**IT IS FURTHER ORDERED** that Burns' claims against MD Martin, C. Marchant, Paula Stelsel, and Jane Doe are **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Burns' complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Nathan Tapio, Mary Moore, and Robert Weinman.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Nathan Tapio, Mary Moore, and Robert Weinman shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Burns is located.

**IT IS FURTHER ORDERED** that the agency having custody of Burns shall collect from his institution trust account the $281.35 balance of the filing fee by collecting monthly payments from Burns' prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Burns is transferred to another institution, the transferring institution shall forward a copy of this Order along with Burns' remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

                Office of the Clerk
                United States District Court

8

Case 2:22-cv-00572-BHL   Filed 07/11/22   Page 8 of 9   Document 10

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Burns is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Burns may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin on July 11, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge